IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAMADU BALDE, | : | CIVIL NO. 1:17-CV-1446 |
| Petitioner, | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| CLAIR DOLL, et al., | : | |
| Respondents. | : | |

# REPORT AND RECOMMENATION

## I. Factual Background

On August 15, 2017, the petitioner, Mamadu Balde, filed a petition for writ of habeas corpus with this court, challenging the constitutionality of his detention by immigration officials pending his removal from the United States. (Doc. 1.) Along with his petition, Balde filed a motion seeking expedited consideration of this petition, (Doc. 2.), which we granted in part setting an expedited schedule for promptly addressing Balde's claims that he was being unlawfully detained. The respondents, in turn, have responded to Balde's petition with commendable dispatch and as a result of this thorough and vigorous advocacy on the part of all counsel the constitutional contours of this dispute are now clearly defined.

The parties' filings reveal the following essentially undisputed facts: The petitioner, Mamadu Balde, is a citizen and national of Sierra Leone who has been the subject of longstanding removal proceedings. As part of those proceedings, on

1

November 18, 2008, an immigration judge issued a final order of removal to Sierra Leone, pretermitted Balde's asylum application, and denied all forms of withholding of removal. Balde appealed this decision to the Board of Immigration Appeals and filed a Petition for Review with the Second Circuit but both of these appeals were denied. Consequently on October 25, 2011, Balde became subject to a final order of removal. While Balde was subject to this final order of removal in 2011, immigration officials were unable to arrange with the government of Sierra Leone to remove Balde at that time, and on October 15, 2012, he was released on an Order of Supervision. Balde remained at large subject to this Order of Supervision for nearly five years until June 14, 2017, when the respondents revoked Balde's release and took him into immigration custody pending removal to Sierra Leone.

Balde then filed the instant federal habeas corpus petition, arguing that his continued detention was unlawful, in part because there was no significant likelihood of removal in the reasonably foreseeable future given the past history of difficulties securing travel documents from Sierra Leone, Mr. Balde's homeland. (Doc. 1.) We then received a series of submission from all counsel, detailing the progress of respondents' efforts to secure travel documents for Balde, (Docs. 8,11-13.) These filings culminated on September 12, 2017, with the filing of a Notice by the respondents which states "that the Republic of Sierra Leone has issued an

Emergency Travel Certificate for Petitioner Mamadu Balde's removal from the United States. See Ex. 1. Petitioner's removal is imminent." (Doc. 14.)

In light of these developments, for the reasons set forth below, it is recommended that Balde's petition for writ of habeas corpus be denied.

## II. Discussion

### A. Balde's Removal From the United States is Likely in the Foreseeable Future, and the Petitioner, Therefore, is Not Entitled to Habeas Corpus Relief at this Time

As an alien under a final order of removal, petitioner's detention is governed by a set of specific statutory and constitutional rules. First, by statute, aliens like the petitioner, who are subject to final removal orders, may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). The statute then commands that "[d]uring the removal period the Attorney General shall detain the alien", 8 U.S.C. § 1231(a)(2), and with respect to criminal aliens specifically provides that: "Under no circumstance during the removal period shall the Attorney General release an alien who has been found . . . deportable under section 1227(a)(2) . . . of this title." 8 U.S.C. § 1231(a)(2). For purposes of our analysis of any post-final order period of detention, this statutory ninety-day "removal period" during which detention is mandatory begins on the date the order of removal becomes administratively final. See 8 U.S.C. § 1231(a)(1)(B)(I). Thus,

by statute, the initial 90 days of detention for an alien who is subject to a final order of removal are not only authorized by law, it is actually often compelled by the statute. 8 U.S.C. § 1231(a)(2).

For aliens awaiting removal, like the petitioner, whose detention extends beyond this statutory 90-day time frame, constitutional considerations also come into play and define for us when due process compels some further bond consideration. The contours of those due process rights in this particular immigration setting are defined by the United States Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001). In Zadvydas, the United States Supreme Court extended due process protections to aliens awaiting removal from the United States, while generally sustaining the validity of the initial mandatory detention period for such aliens during the ninety-day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A). Beyond this initial 90-day period the Court concluded that: "we think it practically necessary to recognize some presumptively reasonable period of detention." Id. at 701.

The Court then observed that:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. Id.at701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period and further detention beyond this 90-day period will be presumed reasonable up to a period of 6 months.

However, when calculating these detention periods for purposes of analyzing post-removal delay claims brought by immigration detainees, cases construing Zadvydas recognize that the presumptively reasonable six-month detention period described by the Supreme Court is just that–a presumptively reasonable period of detention. It is not an ironclad time frame within which aliens must be removed, or released. Moreover, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months," id. at 701, courts have concluded that an alien who has been held longer than six months awaiting

5

removal still bears an initial burden of proof to secure release pending removal. In such instances, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).  See, e.g., Rodney v. Mukasey, 340 F. App'x 761, 764 (3d Cir. 2009); Encarnacion-Mendez v. Attorney General, 176 F. App'x 251, 254 (3d Cir. 2006); Joseph v. United States, 127 F. App'x 79, 81 (3d Cir. 2005).

In instances where an alien is unable to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts have frequently sustained continuing periods of detention pending removal well beyond the six-month time frame described as presumptively reasonable by the Supreme Court in Zadvydas, reasoning consistent with Zadvydas that:  "[t]his 6-month presumption, . . ., does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  Zadvydas, 533 U.S. at 701.  See, e.g., Joseph v. United States, 127 F. App'x 79 (3d Cir. 2005) (11 months); Sun v. Holder, No. 10-2186, 2010 WL 5391279 (M.D. Pa. Dec. 22, 2010)(10 months); Joseph v. Lowe, No. 10-1222, 2010 WL 3835872 (M.D. Pa.

Sept. 24, 2010) (10 months); Boyce v. Holder, 09-2254, 2010 WL 817482 (M.D. Pa. March 9, 2010)(18 months); Robinson v. District Director, No. 09-637, 2009 WL 3366439 (M.D. Pa. Oct. 19, 2009) (1 year); Brown v. Attorney General, No. 09-313, 2009 WL 2225431 (M.D. Pa. July 23, 2009) (10 months); Aishrat v. Mukasey, No. 08-786, 2008 WL 3071003 (M.D. Pa. Aug. 1, 2008) (10 months); Cyril v. Bureau of Immigration and Customs Enforcement, No. 05-2658, 2006 WL 1313857 (M.D. Pa. May 11, 2006) (10 months); Nma v. Ridge, 286 F.Supp.2d 469 (E.D.Pa. 2003)(11 months).

While this legal framework affords substantial protections to aliens who are subject to final removal orders, application of these legal standards to this case provides no grounds for affording habeas relief to the petitioner at this time. If we combine Balde's detention periods from 2011 and 2012 with his current removal detention, that total period of detention exceeds six months, a period of time which exceeds the presumptively reasonable time frame described by the Supreme Court in Zadvydas.[1] However, the respondents have shown that Sierra Leone has issued travel documents to Balde and his removal from the United States now seems imminent. Therefore, we find that there is a significant likelihood that Balde will

---

[1] In the alternative if we measure the duration of Balde's detention from the date when he returned to immigration custody, June 14, 2017, **Error! Main Document Only.**this brief detention does not raise concerns of constitutional dimension warranting habeas relief at this time. See Hendricks v. Reno, 221 F. App'x 131 (3d Cir. 2007)

7

be removed in the reasonably foreseeable future. Since "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). See, e.g., Rodney v. Mukasey, 340 F. App'x 761, 764 (3d Cir. 2009); Encarnacion-Mendez v. Attorney General, 176 F. App'x 251, 254 (3d Cir. 2006); Joseph v. United States, 127 F. App'x 79, 81 (3d Cir. 2005), this finding that Balde's removal is likely to occur in the reasonably foreseeable future is fatal to this petition.

While we reach this view regarding the current lawfulness of the petitioner's detention, we also recognize the petitioner's concerns that removal may result in substantial additional delay and detention. Although we find that the petitioner has not presently carried his burden of proof under Zadvydas, justifying habeas corpus relief at this time, we remain mindful of the Supreme Court's admonition that "for detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink". Zadvydas, 533 U.S. at 701. In this regard, this Court's prior observation is particularly apt:

> Of course, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. Thus, if time passes with no progress on

8

> removal, [the petitioner] may file a new 2241 petition challenging his continued detention. We believe it would not be unreasonable for him to file another petition after four more months. Alternatively, he may file sooner if specific events occur indicating he would not be removed in the reasonably foreseeable future. We add, however, that we express no opinion on whether such a motion would succeed in either circumstance.

Aishrat v. Mukasey, No. 08-786, 2008 WL 3071003, *2 (M.D.Pa. Aug.1, 2008). Accordingly, immigration officials should continue to be alert to their legal responsibility to ensure the petitioner's prompt removal from the United States, and strive to expedite his return to his homeland.

At present, however, the representation that travel documents have issued for Balde and that his removal is imminent compels denial of this petition. Indeed, given this Notice filed by the respondents, it seems that this petition may soon be entirely moot. The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996). In the context of habeas corpus petitions mootness questions often turn on straightforward factual issues. Thus:

> [A] petition for habeas corpus relief generally becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition. Lane v. Williams, 455 U.S. 624, 631(1982). This general principle derives from the case or controversy

9

> requirement of Article III of the Constitution, which "subsists through all stages of federal judicial proceedings, trial and appellate ... the parties must continue to have a personal stake in the outcome of the lawsuit." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990) (internal citations and quotations omitted). In other words, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. at 477(citations omitted).

DeFoy v. McCullough, 393 F.3d 439, 441-442 (3d Cir. 2005)

The mootness doctrine often applies with particular force to habeas petitions filed in immigration matters. In the context of federal habeas petitions brought by immigration detainees, it is well-settled that administrative action by immigration officials addressing the concerns raised by an alien's petition renders that petition moot. Burke v. Gonzales, 143 F. App'x 474 (3d Cir. 2005); Gopaul v. McElroy, 115 F. App'x 530 (3d Cir. 2004). In particular, it is well settled that the removal of an alien typically makes an immigration habeas petition moot. See Lindaastuty v. Attorney General, 186 F. App'x 294 (3d Cir. 2006). This is precisely what respondents state will imminently take place in Balde's case. Should Balde be removed, something which we are informed is "imminent", his petition which sought bond pending removal will become moot.

In sum, given the vigorous and effective advocacy of all counsel, the diligence of the respondents, as well as the cooperation of the Sierra Leone government, it appears that Balde's removal to his homeland is now imminent.

Therefore, this petition for writ of habeas corpus and Balde's motion for a hearing on this petition, (Doc. 7.), should be denied.

## III. Recommendation

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition and petitioner's Motion for a Hearing (Doc. 7.), be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of September 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge